[Cite as *Ayersville Water & Sewer Dist. v. Geiger*, 2012-Ohio-2689.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

MARY GEIGER, ET AL.,

      PLAINTIFFS-APPELLANTS,          CASE NO.  4-11-19

      v.

AYERSVILLE WATER AND
SEWER DISTRICT,                         O P I N I O N

      DEFENDANT-APPELLEE.


AYERSVILLE WATER AND
SEWER DISTRICT,

      PLAINTIFF-APPELLEE,            CASE NO. 4-11-20

      v.

MARY E. GEIGER,                  O P I N I O N

      DEFENDANT-APPELLANT.


**Appeals from Defiance County Common Pleas Court**
**Trial Court Nos. 10-CV-40901 and 11-CV-41121**

**Judgments Affirmed**

**Date of Decision:   June 18, 2012**

Case Nos. 4-11-19 and 4-11-20

**APPEARANCES:**

> *Timothy C. Holtsberry* **for Appellants, Mary and Jennifer Geiger**

> *Eric J. Luckage and Sean McCarter* **for Appellee**

**PRESTON, J.**

{**¶1**} Mary Geiger ("Geiger") and Jennifer Geiger ("Jennifer"), appeal the Defiance County Court of Common Pleas' judgment in favor of the Ayersville Water and Sewer District ("the District") following a bench trial. Geiger and Jennifer's claims include that the trial court incorrectly determined their property was included in the District and subject to its authority, that the District's easement over their property was invalid, and that the trial court committed procedural errors during the District's appropriation action. For the reasons that follow, we affirm.

{**¶2**} On May 28, 1992, the Ohio Environmental Protection Agency ("OEPA") issued final findings and orders requiring the District to submit a plan for sewerage improvements to address unsanitary conditions and water quality criteria violations. (OEPA Director's Final Findings and Orders 2005, Def. Ex. N). The OEPA found that many of the homes in the District "are served by inadequate or failing on-site or aeration sewage disposal systems that discharge

-2-

raw or partially treated sewage." (*Id.*). The District subsequently submitted a general sewerage plan, which the OEPA approved in March of 1993. (*Id.*).

{¶3} On November 4, 1993, the OEPA issued orders to the District requiring it to implement the general sewerage plan. (*Id.*). The OEPA approved revisions to the District's plan in September 1994, February 1997, and May 1997. (*Id.*). The plan was broken into implementation phases. (*Id.*).

{¶4} On October 27, 1998, the Ayersville Water and Sewer District Board of Trustees ("the Board") passed Resolution 9811-020, which annexed portions of Defiance Township pursuant to R.C. 6119.05. (Def. Ex. HH). The purpose of the annexation was to include the Defiance Township territory in the District's sanitary sewer system. (*Id.*). Geiger's property was part of the Defiance Township territory the Board annexed. (*Id.*); (Mary Geiger Deed, Def. Ex. Q). At that time, Geiger's property abutted State Route 66 and Watson Road. (Def. Ex. Q).

{¶5} In July 1999, the District submitted to the OEPA a permit to install ("PTI") application and detailed plans for the first phase of sewerage. (Def. Ex. N). The OEPA approved the PTI and sewerage plan in January 2000. (*Id.*).

{¶6} In March 2004, the District submitted a PTI application and detailed plans for the second phase of sewerage. (*Id.*). The OEPA approved the PTI and sewerage plans the following month. (*Id.*).

{¶7} In April 2004, Merlin Butler ("Butler") met with Geiger to obtain an easement to connect her home to the District's sewer system. (Butler Depo. at 8-12).[1] Geiger signed a blanket easement permitting the District to install "a wastewater treatment grinder pump, a control box to be placed on the existing structure, buried wires connecting the pump and the control box to the existing structure's electric meter an [sic] appurtenances." (Easement, Def. Ex. D). The easement further stated that "the intent is for the easement to be 20.00 feet in even width centered on the sewer line, grinder pump, electrical lines, monitor lines, and appurtenance to be constructed." (*Id*.). Geiger claims that Butler represented to her that the easement would be from her home to a sewer connection on Watson Road. (Trial Tr. at 154). Butler contends that the plans he showed Geiger indicated the District would connect her home to the sewer along State Route 66, but that he told her it might be possible for the Board to approve an extension to connect her home along Watson Road. (Butler Depo. at 23-24). During the meeting, Butler learned Geiger had a barn containing bathroom facilities that might also require sewer service. (*Id*. at 32-36). The Board subsequently determined that Geiger's barn would require separate sewer service with its own grinder pump. (Equalization Board Report, Def. Ex. CC).

---

[1] The parties jointly entered Butler's deposition, which was taken for the purpose of using it at trial, into evidence. (Trial Tr. At 333-334). Butler was unavailable during the two day trial. (Butler Depo. at 7).

{¶8} On August 5, 2008, Butler met with Geiger to obtain a second easement to install a grinder pump for the barn. (Butler Depo. at 52-46). Geiger refused to sign the second easement. (*Id*.).

{¶9} Geiger had a hearing before the Equalization Board on December 13, 2008. (*Id*.). The Board had appointed the Equalization Board to hear objections to estimated assessments for the sewer project. (*Id*.). Geiger objected to the Board's determination that she would need two grinder pumps ("EDUs"), one for her house and one for her barn. (*Id*.). The Equalization Board determined that "two EDUs were properly assessed according to the Assessment Policy as a business is operated out of a separate building at the location. Since the property is not serviced by public water, it is impossible to determine the volume of water usage. Thus, the Equalization Board recommends that one EDU for the house and one EDU for the business be assessed." (*Id*.). The Board accepted the Equalization Board's report on January 22, 2009. (Jan. 22, 2009 Board Meeting Minutes, Def. Ex. EE).

{¶10} On August 24, 2009, Geiger conveyed five acres of her property abutting State Route 66 to her daughter, Jennifer. (Jennifer Geiger Deed, Def. Ex. S). Jennifer's deed stated that the property was subject to the District's easement. (*Id*.). Geiger retained ownership of the remaining ten acres of land abutting Watson Road. (Def. Ex. Q). Geiger contended that her land was no longer part of

the District after the conveyance because it no longer abutted the sewer line on State Route 66. (Trial Tr. at 87).

{¶11} On July 22, 2010, the District installed sewage facilities on Geiger's property. (Trial Tr. at 86). On September 14, 2010, Geiger filed a complaint against the District in the Defiance County Court of Common Pleas in case number 10 CV 40901. (Case No. 10 CV 40901, Doc. No. 65). Geiger alleged that the District had installed the sewage facilities with an invalid easement and had trespassed on her property. (*Id.*). Geiger sought a declaratory judgment that her property was not accessible to the District sewer system and monetary damages. (*Id.*).

{¶12} On November 23, 2010, the District notified Geiger of its intent to acquire an easement across her property for the purpose of installing sewer facilities to her barn. (Notice of Intent to Acquire, Def. Ex. OO). On January 18, 2011, the District filed a complaint for appropriation of Geiger's property in the Defiance County Court of Common Pleas in case number 11 CV 41121. (Case No. 11 CV 41121, Doc. No. 44). The District contended that it was authorized to appropriate an easement on Geiger's property to complete construction of the sewer system pursuant to R.C. 6119.11. (*Id.*).

{¶13} On June 8 and 9, 2011, the Defiance County Court of Common Pleas held a single bench trial on both cases. (Trial Tr. at 9). On July 26, 2011, the trial

court issued its opinion and judgment entry resolving all of the issues in favor of the District by determining that: (1) Geiger was part of the District; (2) Geiger's property was accessible to the sewer system; (3) Geiger's connection to the District's sewer system is necessary and proper; (4) the District's easement was valid and unaltered; (5) the District did not trespass on Geiger's property; (6) the District did not obtain the easement through fraud or misrepresentation; (7) the District is immune from Geiger's fraud and trespass claims; (8) the statute of limitations bars Geiger's fraud claim; (9) the District did not owe monetary refunds to Geiger; and (10) Geiger owed the District $1,510.71 as of the date of trial. (Case No. 10 CV 40901, Doc. No. 12); (Case No. 11 CV 41121, Doc. No. 12).

{¶14} The only remaining issue after the trial court's judgment entry was the value of the property the District appropriated from Geiger. (11 CV 41121, Doc No. 6). On September 1, 2011, the trial court issued an agreed judgment entry determining the value of the appropriated property was $97.00. (*Id.*).

{¶15} On August 22, 2011, Geiger and Jennifer filed a notice of appeal on case number 10 CV 40901. (10 CV 40901, Doc. No. 10). On September 22, 2011, Geiger filed a notice of appeal on case number 11 CV 41121. (11 CV

41121, Doc. No. 4).[2]  Geiger now raises 15 assignments of error for our review. For purposes of our discussion, we will first address whether Geiger's property was within the District and subject to its authority; second, whether Geiger's property was accessible to the public sewer project; third, whether the District obtained a valid easement; fourth, whether the District trespassed on Geiger's property when it installed the sewer line and appurtenances; fifth, whether the District's 2010 regulations violate the Due Process Clause; sixth, whether the District had a public purpose sufficient to appropriate Geiger's property; and seventh, whether the trial court committed reversible procedural errors.  As a result, we will address some of the assignments of error out of the order presented in the briefs and combine them where appropriate.

<b>ASSIGNMENT OF ERROR NO. 1</b>

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT MARY'S PROPERTY IS WITHIN THE BOUNDARIES OF THE AYERSVILLE WATER AND SEWER DISTRICT AND SUBJECT TO ITS AUTHORITY**

{¶16} In her first assignment of error, Geiger argues her property is not part of the District, and therefore, she should not be required to connect to the sewer. Geiger contends that when the District annexed territory from Defiance Township, it described the parcels of property it was annexing as parcels that abut or have

---

[2] Case number 10 CV 40901 is appellate case number 4-11-19 and 11 CV 41121 is appellate case number 4-11-20. This Court consolidated the two cases into appellate case number 4-11-20 for purposes of filing the transcript of the proceedings, filing briefs, and oral argument.

access to the sewer main. Geiger argues that the sewer main runs down State Route 66. Geiger contends that since she conveyed the portion of her property abutting State Route 66 to Jennifer in 2009, her property is now located on Watson Road and does not abut the sewer main. Geiger further argues that since her property does not currently abut a sewer main, it is not part of the District and should not be connected to the sewer system.

**{¶17}** The interpretation of statutory authority is a question of law reviewed de novo upon appeal. *Essman v. City of Portsmouth*, 4th Dist. No. 09CA3325, 2010-Ohio-4837, ¶ 40. Our review begins with the plain language of the statute at issue. *Iams v. Daimler Chrysler Corp.*, 174 Ohio App.3d 537, 2007-Ohio-6709, ¶ 17 (3d Dist.). "It is a court's responsibility to enforce the literal language of a statute wherever possible; to interpret, not legislate. Unless a statute is ambiguous, the court must give effect to its plain meaning." *Ohio Bur. of Workers' Comp. v. Dernier,* 6th Dist. No. L-10-1126, 2011-Ohio-150, ¶ 26, citing *Cablevision of the Midwest, Inc. v. Gross*, 70 Ohio St.3d 541, 544 (1994).

**{¶18}** R.C. 6119.05 permits a county, township, or municipal corporation to petition a regional water and sewer district to include territory in its district. R.C. 6119.05 specifically provides:

> At any time after the creation of a regional water and sewer district,
> any county, township, or municipal corporation whose territory is

> not wholly included within such district may file an application with such district setting forth a general description of the territory it desires to have included within such district, the necessity for the inclusion of such territory within the district, that it will be conducive to the public health, safety, convenience, or welfare, and that it will be practical and feasible for such territory to be included within the district. If said application is approved by a majority of the board of trustees of said district, the territory described in said application shall thereupon become part of such district.

R.C. 6119.05 also permits individuals who live in the area proposed to be included in the sewer and water district the option of filing a petition against their inclusion. *Myers v. Trustees of Southwest Regional Water Dist.*, 12th Dist. No. CA98-07-146, *3 (Apr. 19, 1999). R.C. 6119.05 states:

> Such inclusion shall become effective unless, prior to the ninetieth day following the approval of the board or the order of the court for inclusion, qualified electors residing in the area proposed to be included in such district equal in number to a majority of the qualified electors voting at the last general election in such area file with the secretary of the board of trustees of the district in which

inclusion is proposed a petition of remonstrance against such inclusion.

{¶19} In the present case, the Board met on October 27, 1998 regarding Highland, Richland, and Defiance Townships' petitions for inclusion in the District. (Resolution for Application to Include Territory in the Ayersville Water and Sewer District, Pl. Ex. 10). Pursuant to R.C. 6119.05, the Board decided to include "the parcels of property in the township that abut or have access to the main and branch sewers" in the District. (*Id.*). These parcels were recorded on a map and further described in a construction schedule. (*Id.*). The construction schedule included "S.R. No. 66 from a point 2,840 feet South of Bowman Road, Northerly to a point 2,640 feet North of Watson Road" and "Watson Road from a point 200 feet West of S.R. No. 66 East to a point 200' East of Dohoney Road." (*Id.*). Dan Lee Limber ("Limber"), the District's manager, testified that the resolution placed property along State Route 66 into the District. (Trial Tr. at 270-271). In 1998, this property included Geiger's parcel. (*Id.*).

{¶20} Geiger argues that her property is no longer part of the District because it is along Watson Road rather than State Route 66 after her conveyance to Jennifer, and thus, not part of the description "S.R. No. 66 from point 2,840 feet South of Bowman Road, Northerly to a point 2,640 feet North of Watson Road." However, the District approved Defiance Township's petition and included

Geiger's property in the District in 1998. (Pl. Ex. 10). Geiger did not convey the section of her property bordering State Route 66 to Jennifer until 2009. (Def. Ex. S). Thus, at the time the Board passed its resolution including Defiance Township property in the District, Geiger's property bordered State Route 66 and was part of the property added to the District.

{¶21} Geiger has not cited, and this Court has not found, any case law establishing that an individual property owner can remove property that was previously added to a water and sewer district pursuant to R.C. 6119.05 by later subdividing and conveying a portion of that property. To the contrary, R.C. 6119.05 establishes that a property owner can prevent property from being included in a water and sewer district through a petition of remonstrance against the inclusion. *Myers* at *3; R.C. 6119.05. Furthermore, R.C. 6119.05 "unequivocally and clearly reads that the board of trustees' approval of the inclusion will not take effect if the majority of the qualified electors file a written remonstrance with the secretary of the board of trustees. Thus, a petition of remonstrance when duly filed makes ineffectual the action of the board of trustees." *Myers* at *4.

{¶22} In the present case, Geiger has not presented any evidence that she or anyone else pursued this remedy. Instead, Geiger attempted to remove her property from the District by subdividing and conveying a portion of her property,

a remedy that lacks legal support. Consequently, we conclude that the District properly included Geiger's property within its boundaries and that Geiger's property remains subject to the District's authority.

{¶23} Geiger's first assignment of error is, therefore, overruled.

### ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT MARY'S PROPERTY IS ACCESSIBLE TO AYERSVILLE WATER AND SEWER DISTRICT'S SEWERAGE SYSTEM PURSUANT TO R.C. 6119.04(AA) AND R.C. 6117.51**

{¶24} In her second assignment of error, Geiger argues her home is not accessible to the District's sewer system. Geiger contends that since the only definition of accessibility in the Revised Code is located in R.C. 6117.51, that definition of accessibility applies in the present case. Geiger argues that according to R.C. 6117.51, a home more than 200 feet from a sewer main is inaccessible to the sewer project. Geiger contends that her home is more than 700 feet from the sewer main, so her home is inaccessible to the District's sewer project.

{¶25} We review issues of statutory interpretation de novo. *Holmes v. Crawford Machine, Inc.*, 3d Dist. Nos. 3-11-09, 3-11-10, 3-11-12, 2011-Ohio-5741, ¶ 54. R.C. 6119.06(AA) grants a regional water and sewer district the power to require property owners to connect to a water or sewer project and to

determine which homes are accessible, and thus required to connect. R.C. 6119.06(AA) explicitly states that a regional water and sewer district may:

> Require the owner of any premises located within the district to connect the owner's premises to a water resource project determined to be accessible to such premises and found to require such connection so as to prevent or abate pollution or protect the health and property of persons in the district. Such connection shall be made in accordance with procedures established by the board of trustees of such district and pursuant to such orders as the board may find necessary to ensure and enforce compliance with such procedures.

{¶26} Geiger argues that since Chapter 6119 of the Revised Code does not define the meaning of "accessible" for purposes of this provision, this Court should apply the 200 foot rule contained in R.C. 6117.51. R.C. 6117.51 permits a board of county commissioners to order property owners to connect to a public sewer system after the board of health has passed the required resolution. R.C. 6117.51(C) provides an exception to the connection requirement for "[a]ny premises that are not served by a common sewage collection system when the foundation wall of the structure from which sewage or other waste originates is more than two hundred feet from the nearest boundary of the right-of-way within

which the sewer is located." Thus, R.C. 6117.51(C) does not require property owners whose buildings are more than 200 feet from the sewer main to connect to the public sewer system.

{¶27} We disagree with Geiger's contention that Chapter 6117 of the Revised Code is applicable in the present case. Chapter 6117 of the Revised Code applies to county sewers; whereas, Chapter 6119 of the Revised Code applies to regional water and sewer districts. *State v. Maurer Mobile Home Court, Inc.*, 6th Dist. No. WD-06-053, 2007-Ohio-2262, ¶ 28. Thus, R.C. 6117.51 only applies to county commissioners and county boards of health. *Meeker v. Akron Health Dept.*, 9th Dist. No. 24539, 2009-Ohio-3560, ¶ 18. The District "is a water and sewer district established under R.C. Chapter 6119." (Def. Ex. N). Consequently, the provisions of the Revised Code pertaining to regional water and sewer districts, found in R.C. Chapter 6119, govern the instant case.

{¶28} R.C. 6119.06(AA) specifically provides that a regional water and sewer district's board of trustees will establish the procedures to determine which properties are accessible to the public sewer system and grants the district's board of trustees the power to require those property owners to connect to the sewer. On May 30, 2002, the Board adopted the "Ayersville Water and Sewer District Sanitary Sewer Use Regulations" in accordance with R.C. 6119.06(AA).

(Ayersville Water and Sewer District Regulations, Pl. Ex. 30). Under a provision titled "Connections Required" the Board states:

> The owner of all houses, buildings, or properties used for human occupancy, employment, recreation, or other purpose, situated within the District and abutting on any street, alley, right-of-way, or sewer easement in which there is now located or may in the future be located a public sanitary sewer of the District is hereby required to connect such building directly with the proper public sewer in accordance with present District regulations.

On March 4, 2004, the District approved Phase B of the public sewer project. (Phase B Location Map, Def. Ex. KK). The Phase B location map indicated the main sewer line would run down State Route 66. (*Id*.). At that time, Geiger's property bordered that section of State Route 66. (Def. Ex. Q). Geiger's property thus bordered a street where there "may in the future be located a public sanitary sewer." (Def. Ex. KK); (Def. Ex. Q). Furthermore, on April 23, 2004, Geiger signed an easement granting the District "the right to erect, construct, install, and lay, and thereafter use, operate, inspect, repair, maintain, replace, and remove a wastewater treatment grinder pump, a control box to be placed on the existing structure, buried wires connecting the pump and the control box to the existing structure's electric meter an [sic] appurtenances." (Def. Ex. D). As a result,

Geiger's property included an easement where there "may in the future be located a public sanitary sewer." According to the Board's 2002 regulation, Geiger would be required to connect to the sewer because her property bordered a street and included an easement where the District may place a sewer main. (Pl. Ex. 30). The Board's regulations do not prevent homes from being accessible based on their distance from the sewer main. (*Id.*). Consequently, Geiger's argument that her home is inaccessible because it is more than 200 feet from the sewer main lacks merit. We conclude that Geiger's property is accessible to the District's public sewer system.

{¶29} Geiger's second assignment of error is, therefore, overruled.

### ASSIGNMENT OF ERROR NO. 4

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT A VALID EASEMENT EXISTED FOR THE PRIVATE LATERAL CONNECTION FROM STATE ROUTE 66 TO MARY'S HOME**

{¶30} In her fourth assignment of error, Geiger argues the easement is invalid because it did not include a metes and bounds description of its location. Geiger contends that the easement is ambiguous regarding its placement, so parol evidence is admissible to determine the parties' intent. Geiger further argues that since the District drafted the easement, any ambiguities should be decided in her favor. Geiger contends that construing the ambiguous portions of the easement

against the District results in the conclusion that the only valid easement would be from her house to Watson Road, not to State Route 66.

{¶31} Whether the easement's language was sufficiently definite to establish its location is a question of law that is reviewed de novo upon appeal. *Amsbary v. Little*, 4th Dist. No. 90 CA 16, *2 (Mar. 11, 1991). Whether there was sufficient evidence for the trial court to determine the location was consistent with the District's placement of the easement to State Route 66 is reviewed to determine whether the trial court's judgment was against the manifest weight of the evidence. *Id*.

{¶32} In determining whether a judgment is against the manifest weight of the evidence, we cannot substitute our judgment for that of the trier of fact. The trier of fact is in a better position to observe the demeanor of the witnesses, examine the evidence, and weigh the credibility of the testimony and evidence. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Instead, we must determine whether the trier of fact's verdict is supported by some competent, credible evidence going to all the essential elements of the case. *Id*.; *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280 (1978).

{¶33} The extent and limitations of an easement created by an express grant depend upon the language of the grant. *Hiener v. Kelley, II*, 4th Dist. No. 98CA7, *11 (July 23, 1999), citing *Columbia Gas Transm. Corp. v. Bennett*, 71 Ohio

App.3d 307, 318 (2nd Dist.1990). "The failure to describe an easement by metes and bounds does not render the conveying instrument invalid." *H & S Co. Ltd. v. Aurora*, 11th Dist. No. 2003-P-0104, 2004-Ohio-3507, ¶ 16, citing *Roebuck v. Columbia Gas Transp. Corp.*, 57 Ohio App.2d 217, 219-220 (2nd Dist.1977). If the exact location of the easement is undefined, the servient estate has the initial right to determine the easement's location. *Carman v. Entner*, 2nd Dist. No. 13978, \*10 (Feb. 2, 1994). However, the servient estate's right to determine the easement's location is limited by the easement's purpose and must be exercised "with due regard to the suitability and convenience of the way so located to the rights and interests of the owner of the easement." *Id*. Similarly, the owner of the servient estate has the right to use the land, but in a manner that is consistent with the easement. *Rueckel v. Texas Eastern Transmission Corp.*, 3 Ohio App.3d 153, 159 (5th Dist.1981). The owner of the dominant estate may not increase the burden on the servient estate or enlarge his right over the estate. *Hiener* at \*11. "However, changes in the use of an easement are permitted to the extent that they result from the normal growth and development of the dominant land, and are, therefore, a proper and reasonable use of the easement." *Id*., citing *Erie Railroad Co. v. S.H. Kleinman Realty Co.*, 92 Ohio St. 96 (1915).

{¶34} The easement at issue states that Geiger conveyed to the District "a perpetual easement with the right to erect, construct, install, and lay, and thereafter

use, operate, inspect, repair, maintain, replace, and remove a wastewater treatment grinder pump, a control box to be placed on the existing structure, buried wires connecting the pump and the control box to the existing structure's electric meter an [sic] appurtenances." (Def. Ex. D). The easement further states that it "shall be a blanket: said land being described more particularly in Exhibit "A" attached hereto; however, the intent is for the easement to be 20.00 feet in even width centered on the sewer line, grinder pump, electrical lines, monitor lines, and appurtenances to be constructed, subject to existing easements, restrictions, and road right-of-way of record." (*Id.*). The easement does not contain a metes and bounds description of its location, but that does not automatically render it invalid. *H & S Co.* at ¶ 16. The easement clearly describes its size and scope, establishing that it will be 20 feet wide centered on the sewer line, and the purpose is for sewerage on the property. (Def. Ex. D). We conclude that the easement is not invalid due to ambiguity, but does leave open the question of its exact placement.

{¶35} Since the easement's placement is undefined, Geiger, as the owner of the servient estate, had the initial right to determine its location. *Carman* at *10. Geiger testified that she signed the easement with the understanding that it would be placed from her home to Watson Road. (Trial Tr. at 159). Butler testified that he told Geiger the easement would be placed from her home to State Route 66. (Butler Depo. at 23-24). Butler's testimony and the Phase B plans demonstrate

that when Geiger signed the easement, the sewer main was intended to run down State Route 66 and not Watson Road. (*Id.*); (Def. Ex. KK). Butler's testimony and the Phase B plans thus provide competent, credible evidence that the easement should be placed from Geiger's home to State Route 66. Furthermore, placing the easement from Geiger's home to Watson Road as Geiger requests would frustrate the purpose of the easement because the sewer main does not run down Watson Road and was not intended to do so. (Def. Ex. KK). We also cannot find that the District inappropriately enlarged the scope of the easement by installing sewer lines rather than simply a grinder pump. The easement's language and both parties' understanding was that the easement's purpose was to provide sewerage to Geiger's home. (*Id.*); (Butler Depo. at 12-14); (Trial Tr. at 152-154). Consequently, installing a sewer line was a proper use of the easement. *Hiener*, 4th Dist. No. 98CA7, at *11. We cannot find that the easement is invalid due to ambiguity, or that the trial court's determination that the easement was appropriately placed between Geiger's home and State Route 66 is against the manifest weight of the evidence.

{¶36} Geiger's fourth assignment of error is, therefore, overruled.

## ASSIGNMENT OF ERROR NO. 5

**THE TRIAL COURT ERRED AS A MATTER OF LAW AND UNDER THE MANIFEST WEIGHT OF THE EVIDENCE IN NOT FINDING THAT MARY GEIGER WAS INDUCED TO**

**SIGN THE EASEMENT DATED APRIL 23, 2004, THROUGH FRAUD AND/OR MISREPRESENTATION**

**ASSIGNMENT OF ERROR NO. 6**

**THE TRIAL COURT ERRED FINDING THAT THE EASEMENT SIGNED WAS VALID AND CONFORMED WITH THE REQUIREMENTS OF R.C. 5301.01 WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE**

**ASSIGNMENT OF ERROR NO. 12**

**THE TRIAL COURT ERRED FINDING THAT THE EASEMENT WAS VALID BECAUSE THERE WAS "A MEETING OF THE MINDS" AS TO A BLANKET EASEMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE**

**{¶37}** In assignments of error five, six, and twelve, Geiger argues the trial court erred as a matter of law and under the manifest weight of the evidence in determining that the District obtained a valid easement. In her fifth assignment of error, Geiger contends Butler made a material misrepresentation regarding the easement's placement and fraudulently induced her to sign the easement. In her sixth assignment of error, Geiger argues the District failed to correctly notarize the easement; therefore, the instrument is invalid. In her twelfth assignment of error, Geiger contends there was no meeting of the minds regarding the meaning of a blanket easement, so the trial court's determination that there was a meeting of the minds was against the manifest weight of the evidence.

{¶38} Geiger first argues the District fraudulently induced her to sign the easement by making a material misrepresentation that the District would connect her house to a sewer main running down Watson Road rather than State Route 66. A claim of fraud in the inducement arises when the plaintiff proves the defendant induced the plaintiff to enter into an agreement as a result of fraud or misrepresentation. *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 502 (1998). "In order to prove fraud in the inducement, a plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to her detriment." *Id.*, citing *Beer v. Griffith*, 61 Ohio St.2d 119, 123 (1980).

{¶39} In the present case, Geiger testified that she and Jennifer met with Butler regarding an easement for the District in April 2004. (Trial Tr. at 151). According to Geiger, Butler showed her a general layout of the sewer line for the District, an easement, and a description of her property. (*Id.* at 152). Geiger testified that Butler told her the sewer line "would be going down the hill to Watson Road" and that they did not discuss running the sewer line to State Route 66 because "he said it would not be going out there." (*Id.* at 153). In regards to signing the easement, Geiger further testified that "I told him I was very uncomfortable signing it and didn't know if I was doing the right thing, and he told me that, he reassured me that there would be one grinder pump, both

buildings would be hooked up to and it would run to, run to Watson Road and that after he reassured me that's what it would be, then I signed the easement." (*Id.* at 159).

{¶40} Jennifer testified that she attended the meeting with her mother and Butler regarding the easement. (*Id.* at 226). According to Jennifer, there was an agreement to place the easement from the house to Watson Road and there was no discussion or agreement regarding placing the easement from the house to State Route 66. (*Id.* at 227). Jennifer further testified that, "just before my mom signed it, she asked him and made sure that they were agreed upon where it would go, where the two come together." (*Id.* at 229).

{¶41} Butler, a Poggemeyer Design employee whose responsibilities included obtaining the easements for the District, testified that the District began Phase A of the sewerage project in 1999. (Butler Depo. at 8-10). According to Butler, by 2004, the plans had changed and the project was Phase B. (*Id.* at 10-11). Butler testified that in 2004, he met with Geiger and her daughter, Jennifer, at Geiger's home. (*Id.* at 11-12). Butler testified that at the meeting, they discussed the Phase B project and the District's need for an easement. (*Id.* at 12). Butler further testified that he had a set of the Phase B blueprints, the easement, and a copy of part of Geiger's deed with him at the meeting. (*Id.* at 14). Butler testified that the plans he had with him at the meeting indicated that Geiger's property

would connect to Route 66 and not Watson Road. (*Id*. at 23). In regards to Watson Road, Butler testified that they discussed "[t]hat it was possible, but the Ayersville Water and Sewer Board would need to okay an extension because the proposed line, the force main on Watson, did not go to the property line of Mary Geiger." (*Id*. at 24). Butler testified that Geiger did inquire about connecting to Watson Road during their meeting, but that he did not tell her she would be able to connect to Watson Road. (*Id*. at 30-31).

{¶42} The trial court determined Geiger failed to prove her fraud claim, stating, it was "not persuaded that Butler made any promises that Mary would connect via Watson Road." (Case No. 10 CV 40901, Doc. No. 12). We find that there is some competent, credible evidence supporting the trial court's ruling. Contrary to Geiger's claim, Butler testified that he did not tell Geiger she would be able to connect to the sewer line on Watson Road, only that she may be able to connect to Watson Road subject to the Board's approval. (Butler. Depo. at 23-24). Furthermore, at the time Butler met with Geiger in 2004, the Phase B plans indicated the sewer line would run past her property on State Route 66, not Watson Road. (Def. Ex. KK). Since there is some competent, credible evidence supporting the trial court's finding that Butler did not make a material misrepresentation to Geiger, the trial court's finding is not against the manifest weight of the evidence.

{¶43} In her sixth assignment of error, Geiger argues that she signed the easement during her meeting with Butler but the easement was not notarized. Geiger contends Butler took the easement to the District's office where Patricia Seibenick ("Seibenick"), the District's clerk, invalidly notarized the easement without Geiger's acknowledgement of her signature.

{¶44} R.C. 5301.01(A) states that the grantor's signature "shall be acknowledged by the grantor, mortgagor, vendor, or lessor, or by the trustee, before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgement and subscribe the official's name to the certificate of the acknowledgement." An express easement must comply with these formal requirements to be valid. *Kamenar R.R. Salvage, Inc. v. Ohio Edison Co.*, 79 Ohio App.3d 685, 690 (3d Dist.1992), citing *Hout v. Hout*, 20 Ohio St. 119 (1870).

{¶45} At trial, Geiger testified that she signed the easement during her meeting with Butler and then gave the easement back to Butler. (Trial Tr. at 156, 195). Geiger testified that she clocked out of work at 3:42 p.m. on April 23, 2004, the date the easement was notarized. (*Id.* at 149). Geiger testified that she did not go to the District's office or meet with Seibenick on that date. (*Id.* at 150). Geiger did admit that it would be possible to drive from her place of employment to the District's office within 45 minutes, which would have permitted her to leave at the

end of her work day and arrive before the District's office closed. (*Id*. at 193-194). Geiger testified that she did not have a copy of the easement she signed in 2004. (*Id*. at 194). Jennifer also testified that Geiger signed the easement during her meeting with Butler. (*Id*. at 228).

{¶46} Butler testified that he did not recall Geiger signing the easement during their meeting. (Butler Depo. at 42). Butler further testified that he did not take the easement with Geiger's signature to Seibenick to have her notarize it without Geiger present. (*Id*. at 42). According to Butler, his normal procedure for obtaining the easement was to leave two copies with the person after the meeting, one for the person granting the easement and one to take to an attorney to review. (*Id*. at 43). Butler testified that he told Geiger that after she made a decision regarding sewer service to the barn, she could take the easement to Seibenick or call him because he was a notary. (*Id*.). Butler also testified that there was no reason for him to take the easement to Seibenick to have her notarize it as Geiger alleged because he could have notarized the easement himself. (*Id*. at 51).

{¶47} Seibenick testified that Geiger's easement was notarized on April 23, 2004. (Trial Tr. at 37). Seibenick testified that she did not specifically remember Geiger coming into the office to notarize the easement, but Seibenick did not go to Geiger's house or meet her somewhere else to notarize it. (*Id*. at 37). On the date Geiger's easement was notarized, Seibenick's timecard showed she was in the

office from 7:57 a.m. until she left for the day at 4:30 p.m. with a half hour break for lunch. (*Id*. at 42). Seibenick's activity log for the day indicated she had spent approximately four hours doing work related to easements. (*Id*. at 43). In her ledger for April 23, 2004, Seibenick had written down Geiger's telephone number and work number, and she had made a note for the District to check and call Geiger back regarding the placement of the grinder pump. (*Id*. at 48). Seibenick's ledger also had Geiger's name, address, and an entry showing Geiger had been paid a dollar. (*Id*. at 58). Seibenick testified that Geiger would have been given a dollar by Butler when he took the easement to her, or if she brought the easement in to be notarized by Seibenick. (*Id*.). Based on the ledger, Seibenick testified that the District had paid Geiger a dollar. (*Id*.). Seibenick testified that her signature and notary stamp was on the easement, although she did not specifically recall notarizing Geiger's easement. (*Id*. at 59-60). Seibenick testified that she only notarized the easements when the person either signed it in front of her or acknowledged that the person's signature was on the easement in front of her. (*Id*. at 60). Seibenick testified that her signature on the easement "indicates that she was there and/or I would have asked her is this your signature. If it had been signed previously, I still would have asked her if that was her signature and then signed it as a notary." (*Id*. at 61).

**{¶48}** The trial court found that the easement was properly notarized by Seibenick. (Case No. 10 CV 40901, Doc. No. 12). We find competent, credible evidence supporting the trial court's ruling. The date on the easement indicates that it was notarized on April 23, 2004. (Def. Ex. D). Butler testified that contrary to Geiger's allegation, he left the easement with Geiger and did not take it with him for Seibenick to notarize. (Butler Depo. at 42). Seibenick testified that the entries in her ledger indicated Geiger came to the office and received a dollar from Butler or Seibenick. (Trial Tr. at 58). Seibenick also testified that although she did not specifically remember notarizing Geiger's easement because the District obtained over 200 total easements, she would not have notarized the easement unless Geiger signed the instrument in front of her or acknowledged her signature. (*Id*. at 61). Consequently, the trial court's finding that the easement was validly notarized is not against the manifest weight of the evidence.

**{¶49}** In her twelfth assignment of error, Geiger argues the trial court's finding that there was a meeting of the minds regarding the blanket easement is against the manifest weigh of the evidence. "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16, citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991). The trial court determined that there was a meeting of the minds regarding

the purpose of the easement and that the easement's language is plain and does not require collateral evidence for interpretation. We find competent, credible evidence supporting the trial court's judgment.

{¶50} Geiger testified that Butler explained the easement to her and that they discussed where the District would place the grinder pump. (*Id*. at 153). Geiger testified that "[h]e told me the blanket easement meant that they could go anywhere ten to twenty feet on either side of the line when they put it in, that it would be going to Watson Road. He did not tell me it could go anywhere on your property." (*Id*. at 157). Geiger testified that the word "blanket" was on the easement when she signed it. (*Id*. at 192). Geiger testified that she misunderstood the meaning of the word "blanket." (*Id*. at 218).

{¶51} Butler testified that the easements were "for right-of-way to place sewer force mains, sewer main lines, and for grinder pumps to be placed on private property and the electric lines and such to go to the homes." (Butler Depo. at 10). Butler testified that at the appointment with Geiger, they discussed the project and the need for an easement. (*Id*. at 12). Butler testified that Geiger's easement "was for placement of a grinder pump and forced main from that grinder pump to the main line." (*Id*. at 13). Butler testified that the plans he had with him at the meeting showed that Geiger's home would connect to the sewer line on Route 66. (*Id*. at 23). Butler testified that he told her that any connection to

Watson Road would have to be approved by the Board and did not indicate that she would be able to connect to Watson Road. (*Id*. at 30-31).

{¶52} The easement Geiger signed states, "[t]he easement shall be a blanket: said land being described more particularly in Exhibit "A" attached hereto; however, the intent is for the easement to be 20.00 feet in even width centered on the sewer line, grinder pump, electrical lines, and appurtenances to be constructed, subject to existing easements, restrictions, and road right-of-way of record." (Def. Ex. D). Exhibit "A" is a legal description of Geiger's property. (*Id*.).

{¶53} The easement clearly states that it is a "blanket" for the purpose of installing the sewer line and makes no reference to connecting the sewer line to Watson Road. (Def. Ex. D). According to the testimony, the term "blanket" was on the easement when Geiger signed it, Butler informed Geiger of the easement's purpose, and Butler showed Geiger plans indicating the easement would connect her home to the sewer main on State Route 66. (Trial Tr. at 192); (Butler Depo. at 10, 23). The discussion between Geiger and Butler regarding the possibility of connecting her home to a sewer main on Watson Road should the Board approve Geiger's request further establishes that Geiger understood the District could use the easement to alter the precise location of the sewer line based on changes to the project plans. (Butler Depo. at 30-31). Consequently, we cannot find that the

trial court's judgment that there was a meeting of the minds concerning the blanket easement is against the manifest weight of the evidence.

{¶54} Geiger's fifth, sixth, and twelfth assignments of error are, therefore, overruled.

## ASSIGNMENT OF ERROR NO. 3

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN NOT FINDING THAT THE DISTRICT LACKED AUTHORITY UNDER R.C. CHAPTER 6119 TO ENTER PRIVATE PROPERTY TO INSTALL EQUIPMENT FOR PRIVATE LATERAL SEWER CONNECTIONS**

## ASSIGNMENT OF ERROR NO. 8

**THE TRIAL COURT ERRED AS A MATTER OF LAW AND UNDER THE MANIFEST WEIGHT OF THE EVIDENCE BY NOT FINDING THAT THE DISTRICT HAD TRESPASSED ONTO THE GEIGERS' PROPERTIES**

{¶55} In her third and eighth assignments of error, Geiger argues the District lacked the authority to enter her property and install the sewer equipment and that the District trespassed by entering her land to install the sewer line. In her third assignment of error, Geiger contends the District can require private lateral connections once accessibility has been determined, but cannot unilaterally force the connection. In her eighth assignment of error, Geiger argues the District did not have a valid easement or permission to enter her property, so the District trespassed on her property when it installed the sewer line and grinder pump.

{¶56} We review a claim of common law trespass to determine whether the trial court's judgment was against the manifest weight of the evidence. *Horner v. Whitta*, 3d Dist. No. 13-99-64, *2 (July 27, 2000). "'A common law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue.'" *Apel v. Katz*, 83 Ohio St.3d 11, 19 (1998), quoting *Linley v. DeMoss*, 83 Ohio App.3d 594, 598 (10th Dist.1992). This Court has previously stated that an injured party may seek recourse in the court of common pleas for the common law claim of trespass when public utilities exceed the scope of their easements. *Cottrell v. Am. Elec. Power*, 3d Dist. No. 11-10-06, 2010-Ohio-5673, ¶ 18.

{¶57} We have already determined the District had a valid easement and that the installation of the sewer line did not exceed the scope of the easement. Therefore, we find competent, credible evidence that the District did not trespass on Geiger's property when it installed the sewer line in accordance with the scope and purpose of its easement. We also do not find any merit to Geiger's argument that the District unilaterally forced her to connect to the sewer line. Limber, the District's manager, testified that the District installed the sewer line and grinder pump near Geiger's house. (Trial Tr. at 83-86). Limber testified that another pipe would then need to be connected from the grinder pump to Geiger's home. (*Id*. at

272-273). According to Limber, the District ran the sewer line to within 30 feet of Geiger's house, so Geiger will need to run a 30 foot line to connect. (*Id.* at 281-283). Geiger has not presented any evidence that, at the time of this appeal, the District had run a 30 foot line connecting her home to the grinder pump. Consequently, the evidence presented to the trial court establishes that Geiger was not connected to the grinder pump and sewer line at the time of this appeal, contrary to her claim.

{¶58} Geiger's third and eighth assignments of error are, therefore, overruled.

### ASSIGNMENT OF ERROR NO. 7

**THE TRIAL COURT ERRED AS A MATTER OF LAW BY NOT FINDING THAT AYERSVILLE WATER AND SEWER DISTRICT'S RULES AND REGULATIONS REGARDING ACCESSIBILITY VIOLATE THE DUE PROCESS CLAUSE**

{¶59} In her seventh assignment of error, Geiger argues the District's 2010 accessibility regulation is unconstitutional. Geiger contends the regulation fails to provide a criteria, basis, or guideline for accessibility, leaving the determination of which properties are accessible to the District manager's discretion. Geiger argues that, as a result, the District's regulation violates the Due Process Clause.

{¶60} The District passed the Ayersville Water and Sewer District Sanitary Sewer Use Regulations on May 30, 2002. (Pl. Ex. 30). The District adopted the regulation at issue on July 6, 2010, two weeks before it installed Geiger's sewer

line. (Pl. Ex. 29); (Trial Tr. at 86). As previously discussed, Geiger had signed the easement in 2004, made payments to the District for the cost of the sewerage project, and attended a hearing regarding whether she was required to have two grinder pumps prior to the District's adoption of the 2010 regulations. (Trial Tr. at 163, 259-261); (Pl. Ex. 29). This evidence demonstrates that the District had determined Geiger was accessible to the sewer line and intended to connect her prior to the 2010 regulations. Furthermore, Geiger has not presented any additional evidence indicating the District applied the new regulation to her case. Since we conclude the District did not apply the 2010 regulation in the present case, we need not address whether the regulation is unconstitutional.

{¶61} Geiger's seventh assignment of error is, therefore, overruled.

### ASSIGNMENT OF ERROR NO. 13

**THE TRIAL COURT ERRED AS A MATTER OF LAW FINDING THAT PUBLIC PURPOSE EXISTED FOR THE PROPERTY REQUIREMENT FOR AN APPROPRIATION**

{¶62} In her thirteenth assignment of error, Geiger argues the trial court erred by finding the District had a public purpose sufficient to appropriate her property for the second easement. Geiger contends that the sewer line and grinder pump would only benefit her, as opposed to the public. Geiger also argues that her sewage treatment system functions correctly and is discharged outside of the

District, so the appropriation of Geiger's property for the public sewer system does not serve a public purpose for those within the District.

{¶63} Our review of the trial court's decision regarding whether the District has the right to appropriate Geiger's property is limited to an abuse of discretion. *Media One v. Manor Park Apartments Ltd.*, 11th Dist. Nos. 2000-L-045, 99-L-117, 2000-L-046, 99-L-116, *3 (Oct. 13, 2000), citing *Hover v. City of Warren*, 11th Dist. No. 97-T-0012 (Dec. 31, 1997). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶64} R.C. 163.08 states, "[a] resolution or ordinance of the governing or controlling body, council, or board of the agency declaring the necessity for the appropriation shall be prima-facie evidence of such necessity in the absence of proof showing an abuse of discretion by the agency in determining such necessity." R.C. 163.09(B)(1)(b) further provides, "[t]he presentation by a public utility or common carrier of evidence of the necessity for the appropriation creates a rebuttable presumption of the necessity for the appropriation." Furthermore, courts have historically permitted the appropriation of public property for the purposes of expanding and developing "utilities, railroads, and mines." *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, ¶ 48. Courts have affirmed the

use of appropriation in these contexts under the theory that they provide a larger, general public benefit. *Id.*

**{¶65}** In the present case, the OEPA issued its Director's Final Findings and Orders where it found that the District "is a water and sewer district established under R.C. Chapter 6119 to provide for the collection, treatment and disposal of sewage within unincorporated areas of Highland, Richland, and Defiance Townships, Defiance County, Ohio." (Def. Ex. N). The OEPA also found that many of the homes in the District "are served by inadequate or failing on-site or aeration sewage disposal systems that discharge raw or partially treated sewage." (*Id.*). The OEPA required the District to submit and implement a plan for sewerage improvements. (*Id.*). The OEPA also ordered the District to exercise its statutory authority "to compel all premises in the unincorporated communities, and in all areas currently or in the future served by public sanitary sewers, to connect sewage flows to the public sanitary sewer and cease use of existing sewage disposal systems." (*Id.*). The Board subsequently passed a resolution where it found that it was necessary to appropriate an easement on Geiger's property to complete the required public sewer project and abate the public health nuisance. (Def. Ex. NN).

**{¶66}** The District thus presented evidence that the OEPA found pollution resulting from inadequate sewage systems and required the District to implement a

public sewer system in Defiance Township. The District also demonstrated that it passed a resolution where it found it necessary to appropriate an easement on Geiger's property. This Court has previously concluded that a trial court did not abuse its discretion by approving a public entity's appropriation of property to install a public sewer system pursuant to OEPA orders. *Cairo Village Council v. Miller*, 121 Ohio App.3d 246, 249-250 (3d Dist.1997). Consequently, we cannot conclude that the trial court abused its discretion by permitting the District to appropriate Geiger's property in the present case.

{¶67} Geiger's thirteenth assignment of error is, therefore, overruled.

### ASSIGNMENT OF ERROR NO. 14

**THE COMPLAINT FOR APPROPRIATION DID NOT CONTAIN A CORRECT LEGAL DESCRIPTION OF THE PROPERTY TO BE TAKEN**

### ASSIGNMENT OF ERROR NO. 15

**THE TRIAL COURT ERRED AS A MATTER OF LAW BY NOT DISMISSING THE CASE AS ALL REQUIREMENTS OF R.C. 163.041 HAD NOT BEEN ADHERED TO PRIOR TO THE FILING OF THE APPROPRIATION**

{¶68} In her fourteenth and fifteenth assignments of error, Geiger argues the trial court committed reversible procedural errors. Geiger first contends that the District failed to provide the proper legal description of Geiger's land in its complaint for appropriation in violation of R.C. 163.05. Secondly, Geiger argues the District did not meet the requirements of R.C. 163.04 and 163.041 because it

-38-

omitted a required paragraph from its notice of intent to acquire, informing Geiger of her right to appeal the District's decision.

{¶69} R.C. 163.05 provides the requirements an agency must meet to commence an appropriation action. R.C. 163.05(A) requires the petition for appropriation to contain "[a] description of each parcel of land or interest or right therein sought to be appropriated, such as will permit ready identification of the land involved." Prior to initiating this action, R.C. 163.041 requires the agency to provide the property owner with notice of its intent to acquire the property. This notice must inform the property owner that he or she has the right to appeal the agency's decision to acquire the property and that the property owner "may object to this project's public purpose, necessity, designation of blight (if applicable), or valuation by writing, within ten business days of receiving this notice." R.C. 163.041.

{¶70} In the present case, on November 23, 2010, the District provided Geiger with notice of its intent to acquire an easement on her property. (Def. Ex. OO). However, the letter did not include the required paragraph informing Geiger of her right to appeal the District's decision to acquire an easement on her property. (*Id.*). The District subsequently filed a complaint for appropriation of Geiger's property on January 18, 2011. (Case No. 11 CV 41121, Doc. No. 44). The description of the proposed easement was similar to the easement Geiger had

already signed, stating that the easement would give the District "the right to erect, construct, install, and lay, and thereafter use, operate, inspect, repair, maintain, replace, and remove One wastewater treatment grinder pump, a control box, to be placed on the existing structure, buried wires connecting the control box to the existing structure's electric meter, sewer line and appurtenances." (*Id*.). The document also stated, "[t]he easement shall be a blanket * * * however, the intent is for the easement to be 20.00 feet in even width centered on the sewer line, grinder pump, electrical line(s), monitor line(s), and appurtenances." (*Id*.). The complaint included an inaccurate legal description of Geiger's property after her conveyance of a portion of the property to Jennifer. (*Id*.). Geiger argues that these procedural errors warrant a reversal of the appropriation action. We disagree.

{¶71} R.C. 163.12 governs defects in appropriation proceedings. According to R.C. 163.12(C), "[t]he court may amend any defect or informality in proceedings under sections 163.01 to 163.22 of the Revised Code. The court may cause new parties to be added and direct further notice to be given to a party in interest as the court considers proper." Thus, R.C. 163.12(C) permits parties to amend a petition for appropriation in accordance with Civ.R. 15. *Wray v. Tattersall*, 6th Dist. No. L-98-1030, *5 (Sept. 18, 1998). "The language of Civ.R. 15(A) favors a liberal policy when the trial judge is confronted with a motion to amend a pleading." *Id*., citing *Wilmington Steel Products, Inc. v. Cleveland Elec.*

*Illum. Co*, 60 Ohio St.3d 120, 122 (1991). Appellate courts review a trial court's decision to permit parties to amend defects in the proceedings for an abuse of discretion. *Wray* at *5.

{¶72} On March 25, 2011, the trial court permitted the District to file a supplemental notice of its intent to appropriate an easement on Geiger's property. (Case No. 11 CV 41121, Doc. No. 33). The supplemental notice informed Geiger of her right to appeal the District's decision. (*Id.*). On June 1, 2011, the trial court also permitted the District to file an amended complaint. (Case No. 11 CV 41121, Doc No. 25). The amended complaint included a revised legal description of Geiger's property. (*Id.*).

{¶73} We cannot find that the trial court abused its discretion by permitting the District to amend its notice of intent to appropriate and complaint for appropriation. R.C. 163.12 permits the trial court to amend any defects in the appropriation proceedings and Geiger has not offered any evidence demonstrating that she suffered prejudice as a result. In fact, Geiger testified at trial that she was aware that the District was seeking an easement to connect the barn to the public sewer system. (Trial Tr. at 186). The notice of intent to appropriate and complaint for appropriation were thus sufficient to put Geiger on notice of the District's intent to appropriate an easement to the barn.

{¶74} Geiger's fourteenth and fifteen assignments of error are, therefore, overruled.

### ASSIGNMENT OF ERROR NO. 9

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT THE STATUTE OF LIMITATIONS HAD EXPIRED ON ANY FRAUD CLAIM**

### ASSIGNMENT OF ERROR NO. 10

**THE TRIAL COURT ERRED AS A MATTER OF LAW FINDING THAT THE DISTRICT'S IMMUNITY TO FRAUD PURSUANT TO R.C. CHAPTER 2744 PRECLUDED ANY RECOVERY BY THE GEIGERS**

### ASSIGNMENT OF ERROR NO. 11

**THE TRIAL COURT ERRED AS A MATTER OF LAW FINDING THAT THE DISTRICT'S IMMUNITY TO TRESPASS PURSUANT TO R.C. CHAPTER 2744 PRECLUDED ANY RECOVERY BY THE GEIGERS**

{¶75} In her ninth, tenth, and eleventh assignments of error, Geiger argues the trial court erred by determining the statute of limitations had run on her fraud claim and erred by deciding the District had immunity pursuant to R.C. Chapter 2744 that precluded Geiger from recovering on her fraud and trespass claims.

{¶76} We have already determined that the trial court did not err in determining Geiger failed to prove her fraud and trespass claims. Consequently,

Geiger's ninth, tenth, and eleventh assignment of error are moot and we decline to address them.  *See* App.R. 12(c).

**{¶77}** Geiger's ninth, tenth, and eleventh assignments of error, are, therefore, found to be moot.

**{¶78}** Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgments of the trial court.

*Judgments Affirmed*

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jlr**